UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br><br>Plaintiff,<br><br>vs.<br><br>**WILLIAM E. YOUNG,**<br><br>Defendant. | **CASE NO. 2:17-CR-178**<br>**JUDGE WATSON** |

## GOVERNMENT'S SENTENCING MEMORANDUM

The United States, by and through undersigned counsel, respectfully submits its Sentencing Memorandum in connection with the sentencing of Defendant William E. Young. For the following reasons, the United States submits that a sentence within the applicable guidelines range of 51–60 months is reasonable and appropriate in this case.

### 1. BACKGROUND

On August 10, 2017, the grand jury returned an indictment charging the defendant, William E. Young, with one count of cyberstalking, in violation of 18 U.S.C. § 2261A(2). (ECF No. 8.) On November 27, 2017, the parties filed a plea agreement to resolve this matter. (ECF No. 22.)

Based on him signing the plea agreement, on December 6, 2017—before his change-of-plea hearing—the defendant filed a motion seeking review of his detention order. (ECF No. 26.) In his motion, the defendant asserted that continued detention was not warranted because "the case ha[d] undergone a dramatic shift" since his detention hearing, due to the sole fact that he ha[d] signed a plea agreement. (*Id.* at 2.) The defendant further claimed that, in light of his entry into

1

the plea agreement, he had "finally moved past his past," was "now prepared to FULLY comply with the orders of the Court," and should be granted a personal recognizance bond. (*Id.* at 3.) On January 3, 2018, Magistrate Judge Deavers denied the defendant's motion without prejudice, clarifying that he could renew his motion for consideration by the district judge after his change-of-plea hearing. (ECF No. 29.)

On January 5, 2018, the defendant entered a plea of guilty to the sole count of the Indictment, which charged him with cyberstalking, in violation of 18 U.S.C. § 2261A(2). (ECF Nos. 30, 38.) At the time he entered his guilty plea, the defendant admitted that he had cyberstalked victims R.M. and J.M., using the mail and the Internet, with the intent to harass or intimidate them.

The Probation Office released the final Presentence Investigation Report ("PSR") on March 22, 2018. Sentencing was then scheduled for May 1, 2018.

On April 18, 2018, the defendant filed a motion to withdraw his guilty plea and proceed to trial pro se. (ECF No. 37.) In his motion, the defendant contended that "the guideline sentence being recommended was the maximum allowed by the law," he "feels that he was lied to by his attorney and the prosecution," that he "received no benefit of his plea bargain," and "is facing the maximum penalty allowed by law." (ECF No. 37, at 4.) The Court continued the defendant's sentencing hearing and instead conducted a hearing on his motion to withdraw his guilty plea on May 1, 2018. Following argument from the parties, the Court made an oral ruling denying the defendant's motion, which was later memorialized in an order. (ECF No. 42.)

Sentencing in this matter is now scheduled for June 6, 2018.

## 2. ARGUMENT

After *Booker v. United States*, 543 U.S. 220 (2005), district courts are to engage in a three-step sentencing procedure. Courts are first to determine the applicable guidelines range, then

consider whether a departure from that range is appropriate, and finally, consider the applicable guidelines range—along with all of the factors listed in 18 U.S.C. § 3553(a)—to determine what sentence to impose.  The central command to district courts in imposing a sentence is to fashion one that is sufficient, but not greater than necessary, to meet the goals set forth in 18 U.S.C. § 3553(a).

Here, the Probation Officer calculated that the defendant's total offense level is 23, and his criminal history category is II.  The Probation Officer noted that these calculations result in an advisory guidelines range of 51–60 months of imprisonment, a term of supervised release of 1–3 years, and a fine of $20,000–$200,000.  The Probation Officer's recommended sentence is 60 months of imprisonment, followed by 3 years of supervised release, and no fine.

The Probation Officer identified several factors that may warrant a departure in this case, including the seriousness of the offense, the magnitude of the conduct, and the extreme length of the conduct.[1]  (PSR, ¶ 101–03.)

The United States concurs with the applicable guidelines range calculated by the Probation Officer and submits that a significant term of incarceration—between 51–60 months—is warranted in this case.  This memorandum will address (1) any unresolved objections to the PSR; and (2) the statutory sentencing factors under 18 U.S.C. § 3553(a).

## 2.1. Unresolved Objections to the PSR

There are three unresolved objections to the PSR.  The defendant objects to (1) the

---

[1] Pursuant to U.S.S.G. § 2A6.2 cmt. 5, if the defendant received an enhancement under subsection (b)(1) but that enhancement does not adequately reflect the extent or seriousness of the conduct involved, an upward departure may be warranted.  For example, an upward departure may be warranted if the defendant stalked the victim on many occasions over a prolonged period of time.

The United States respectfully submits that an upward departure for extreme psychological injury to the victim pursuant to U.S.S.G. § 5K2.3 may be warranted, particularly if the Court finds that the official victim enhancement does not apply in this case.

Probation Officer's description of the offense conduct; (2) the two-level enhancement for stalking activity; and (3) the six-level enhancement for official victim.

***Objection No. 1 (paragraphs 8–23): Offense Conduct.*** The defendant objects to the description of the offense conduct, contending that only the facts included in the indictment and presented at the change-of-plea hearing should be reflected. Specifically, the defendant objects to (1) "any details relating to [T.S.]" and (2) the time frame of the alleged conduct.

The Probation Officer accurately described the offense conduct. While the defendant is correct that the indictment alleges the time frame of March 2008 through August 2017, that time period is merely the *charged* period alleged ("in or about") for his cyberstalking activity. *See* U.S.S.G. § 1B1.3 cmt. n.1 ("The principles and limits of sentencing accountability under this guideline are not always the same as the principles and limits of criminal liability."). There is no dispute that the defendant's harassment of R.M. began after his October 1999 arrest for stalking T.S., during which R.M. was one of the arresting officers. The defendant filed at least three civil lawsuits against R.M. – as early as 2001 – and continuing in 2002 and 2006. The defendant's harassment via disparaging letters began in or about March 2008, and continued up and until August 2017.

Along the same lines, the Probation Officer's inclusion of "any details relating to [T.S.]" in the PSR was appropriate. This offense began after the defendant's October 1999 arrest for stalking T.S. Throughout his nearly two decades of stalking, the defendant constantly weaved T.S. into his harassment activity, including creating the following related websites:

- www.tamarachafinshamanskywasaprostitute.com
- www.delawareohiopolicechiefrussmartinisacriminalforprostitute.com
- www.delawaresheriffrussmartinbarneyfifepatronizesprostitutes.com

The website specifically directed towards T.S. was further incorporated into business cards

4

that the defendant distributed to individuals in order to disparage R.M. For example, one of the business cards stated, "Exposing Corruption. Are you a victim of police corruption like me or know anyone who has been? If so, contact me, William Young, at bodeie@yahoo.com, 614-787-7105. Read my story of police corruption on behalf of a prostitute whose clients were politicians, judges, cops and lawyers at www.tamarachafinshamanskywasaprostitute.com." (PSR, ¶ 20.) Even the defendant concedes in his objection letter that his "behavior was motivated by a misplaced sense that he had been wronged by [R.M.] *and [T.S.]*." He goes on to state that the "proof of this motivation lies in the websites at issue. . . . *[T.S.] was also targeted*."

The Probation Officer further appropriately made clear that T.S. is not considered to be a victim of this offense conduct but, rather, as "Offense Behavior Not Part of Relevant Conduct." (*See* PSR, ¶ 50.) In any event, the offense commenced because of the defendant's October 1999 arrest for stalking T.S., and the defendant continued to incorporate T.S. into his harassment and stalking activities of R.M. and his wife. Any reference to T.S. in the PSR was thus appropriately included, as it constitutes "all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant," U.S.S.G. § 1B1.3(a)(1)(A), as well as "all harm that resulted from the acts and omissions [caused by the defendant] . . . and all harm that was the object of such acts and omissions," *id.* § 1B1.3(a)(3).

Moreover, the defendant has not presented any evidence to rebut the Probation Officer's conclusions. "A defendant cannot show that a PSR is inaccurate by simply denying the PSR's truth. Instead, beyond such a bare denial, he must produce some evidence that calls the reliability or correctness of the alleged facts into question. If a defendant meets this burden of production, the government must then convince the court that the PSR's facts are actually true. But the defendant gets no free ride: he must produce more than a bare denial, or the judge may rely entirely

5

on the PSR." *United States v. Treadway*, 328 F.3d 878, 888 (6th Cir. 2003) (quoting *United States v. Mustread*, 42 F.3d 1097, 1102 (7th Cir. 1994)) (citations and internal quotation marks omitted); *see also United States v. Dolan*, No. 95-1769, 1996 WL 599819, at *7 (6th Cir. Oct. 17, 1996) ("[A] defendant who challenges factual allegations in the PSR has the burden of producing some evidence beyond a bare denial that calls the reliability or correctness of the alleged facts into question.").

***Objection No. 2 (paragraphs 35–38): Stalking Enhancement.*** The defendant objects to the two-level enhancement under U.S.S.G. § 2A6.2(b)(1)(E) for stalking activity, contending that "legally this enhancement makes no sense."

The Probation Officer properly applied the enhancement. The defendant engaged in "a pattern of activity involving stalking, threatening, [and] harassing . . . the same victim[s]" – R.M. and his wife. U.S.S.G. § 2A6.2(b)(1)(E). The Application Notes define a "pattern of activity" as "any combination of two or more separate instances of stalking, threatening, harassing, or assaulting the same victim, whether or not such conduct resulted in a conviction." U.S.S.G. § 2A6.2 cmt. n.1. In this case, it is undisputed that the defendant sent at least 60 letters and mail matters on separate occasions, as well as created 4 separate websites to further his stalking activity.

Contrary to the defendant's assertion that "[t]here is simply no cyberstalking offense where this enhancement would not be applicable," and "[s]urely that is not the intent of the Guidelines where the purpose of an enhancement is to distinguish between more and less serious forms of the offense," the intent of the Sentencing Commission is clear and can be found in the commentary of U.S.S.G. § 2A6.2. The commentary states, "[i]n determining whether subsection (b)(1)(E) applies, the court shall consider, under the totality of the circumstances, any conduct that occurred prior to or during the offense." U.S.S.G. § 2A6.2 cmt. n.3. The Commission also states that, even after

6

§ 2A6.2(b)(1) is applied, if the district court concludes that the enhancement "does not adequately reflect the extent or seriousness of the conduct involved," then "an upward departure may be warranted." *Id.* cmt. n.5. The example in the application commentary for an upward departure is if "the defendant stalked the victim on many occasions over a prolonged period of time." *Id.*

By stating that the conduct that occurred "during the offense" should be considered, the application note in the commentary expressly demonstrates the Commission's intent to provide and enhancement for the pattern of activity even if already considered in the underlying offense of conviction. Thus, any argument of double-counting not expressly prohibited was likely intended by the Commission. *See United States v. Cruzado-Laureano*, 440 F.3d 44, 49 (1st Cir. 2006); *see also United States v. Lilly*, 13 F.3d 15, 19 (1st Cir. 1994) ("The Sentencing Commission has not been bashful about explicitly banning double counting in a number of instances."). Here, the guideline and commentary are silent about prohibiting inclusion of conduct for determining the base offense level, under § 2A6.2(a), and the specific offense characteristics under § 2A6.2(b). If the Sentencing Commission did not intend to provide for more punishment for the defendant that committed more instances of stalking, threats, or harassment during a "course of conduct," it could have expressly prohibited double counting. *See Lilly*, 13 F.3d at 19 (providing examples). But it is logical to conclude that the Commission intended to enhance a sentence based on frequency of conduct. The comment notes even provide for an upward departure if the enhancement is not sufficient to reflect the severity of the conduct. Absent a prohibition or other direction from the Commission, the enhancement is not duplicative of the defendant's base offense level or specific offense characteristic. Additional criminal conduct, as occurred here, warrants additional punishment.

Moreover, the base offense level and the specific offense characteristic have separate and

7

distinct sentencing purposes. According to the Sentencing Commission, the base offense level of 18 is the appropriate starting point for the crimes of interstate domestic violence, in violation of 18 U.S.C. § 2261, interstate violation of protection orders, in violation of 18 U.S.C. § 2262(a)(1), and interstate stalking and cyberstalking, in violation of 18 U.S.C. § 2261A. Despite their similarities, the Commission approved increasing the base offense level for these crimes when certain offense characteristics are involved. The potential enhancements, under § 2A6.2(b), have the independent purpose of increasing punishment when the specified aggravating facts occurred. Because the base offense level does not fully account for the harm associated with actions like those of the defendant's, the additional enhancement is permissible. The Probation Officer properly enhanced the defendant's guidelines based on his pattern of stalking R.M. and his wife because the base offense level did not take that pattern into account and did not capture the full severity of the defendant's behavior. The Probation Officer appropriately determined that the defendant's behavior was a pattern of stalking and harassing the same victims that had not been adequately accounted for in the base offense level. Because the kind of harm was not already fully accounted for in the base offense level, the application of the two-level enhancement for "pattern of activity" was properly applied.

*Objection No. 3 (paragraphs 39–42): Official Victim Enhancement.* The defendant objects to the six-level enhancement under U.S.S.G. § 3A1.2 for official victim, contending that the defendant was never "motivated" by the victim's status as a law enforcement officer.

The Probation Officer properly applied the enhancement. The enhancement applies "[i]f the victim was . . . a government officer or employee" and "the offense of conviction was motivated by such status." U.S.S.G. § 3A1.2(a). The defendant does not dispute that R.M. was "a government officer or employee," and that the applicable Chapter Two Guideline is from Part A.

8

*See id.* at § 3A1.2(b). He argues, however, that the enhancement should not apply because his conduct was not motivated by the victim's status as a government officer. Instead, the defendant states that his conduct was motivated "by a misplaced sense that he had been wronged by [R.M.] and [T.S.]"

But the defendant knew that his victim was a law enforcement officer, and his intention – among others – was to spur official action against R.M., as well as to harass and intimidate him and his wife. *See* U.S.S.G. § 3A1.2 cmt. n.3 ("Motivated by such status" . . . means that the offense of conviction was motivated by the fact that the victim was a government officer or employee, or a member of the immediate family thereof."). The enhancement does not require that the defendant's conduct be motivated by personal animus against the government employee. Indeed, the Application Notes seek to eliminate this possibility by providing that conduct "motivated by a personal dispute," where the victim just happened to be a government employee, would not be covered by the enhancement. *See* U.S.S.G. § 3A1.2, cmt. n.3.

Moreover, the issue is not necessarily the defendant's intent, but rather, "the logical implications and consequences" of what he did. *United States v. Manns*, 640 F. App'x 347, 352 (6th Cir. 2017) (affirming district court's application of six-level sentencing enhancement under U.S.S.G. § 3A1.2(a) and (b)). In addition to sending a magnitude of disparaging letters to various individuals and community businesses, the defendant created websites and sent letters and mailings to multiple government agencies, including Delaware City Hall, the Delaware Chamber of Commerce, the Delaware City Mayor's Office, members of Delaware City Council, the Delaware Police Department, the Delaware County Sheriff's Department, the Delaware County Jail, and the Arapahoe County, Colorado Prosecutor's Office. The defendant specifically sent the letters and mailings to government offices that had a history with R.M. – using R.M.'s name – to

create problems for R.M. The motivation for the defendant's conduct was to humiliate, harass, intimidate, and punish R.M. The websites referred to R.M.'s official title and duties:

- www.**delawareohiopolicechiefrussmartin**isacriminalforprostitute.com
- www.**delawaresheriffrussmartin**isapdeophile.com
- www.**delawaresheriffrussmartin**barneyfifepatronizesprostitutes.com

The defendant's mailings also referred to R.M.'s official and duties, as they included portions of police reports and court records relating to his 1999 stalking arrest and the civil lawsuits filed against R.M.; information about police misconduct laws enforced by the Department of Justice; made references to R.M. as "a gay wimp who wants to hide behind a gun and a badge because he's a little pussy"; made claims that R.M. had prosecuted the defendant because he was a client of T.S. when she was a prostitute; and made claims that the defendant wanted to "expose police corruption." The defendant knew that these websites and mailings would reach the community and specific government offices that had history with R.M., and he sought to attract their attention to R.M. and create adverse consequences for him. The motivation for the defendant's conduct was to punish R.M. and have him removed from office. During an interview with the Ohio Bureau of Criminal Investigation (BCI) in May 2010, the defendant stated to the agents, "I want him [R.M.] fired. I want him to eat his gun." The official status of R.M. and his wife was an integral part of achieving this goal.

**2.2. <u>Sentencing Factors Under 18 U.S.C. § 3553(a)</u>**

Pursuant to 18 U.S.C. § 3553(a), there are seven factors that the Court must consider during sentencing: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, and provide just punishment, as well as afford adequate deterrence to criminal conduct, protect the public from further crimes of the defendant, and provide the

10

defendant with needed training, medical care, or other correctional treatment in the most effective manner; (3) the kinds of sentences available; (4) the kinds of sentences and the sentencing ranges as set forth in the Sentencing Guidelines; (5) the Sentencing Guidelines policy statements; (6) the need to avoid unwarranted sentencing disparities; and (7) the need to provide restitution to any victims of the offense. An analysis of the most pertinent § 3553(a) factors in this case demonstrates that a sentence within the applicable guidelines range of 51–60 months is reasonable and appropriate.

***The Nature and Circumstances of the Offense.*** The defendant's very serious crime warrants significant punishment. Stalking is a severe offense, and the nature and circumstances of the defendant's offense are particularly concerning.

The defendant engaged in a campaign to harass and intimidate the victims, via primarily the mail and Internet, for nearly two decades. The investigation revealed that the defendant distributed fliers and mailed a magnitude of disparaging letters and documents to various individuals and businesses, including the victim's family members; neighbors; local community businesses, including the victim's physician and barber; the victim's church, church pastor, and pastor's wife; Ohio Wesleyan College; Delaware City Hall; the Delaware Chamber of Commerce; the Delaware City Mayor; Delaware City Council members; the Delaware Police Department; the Delaware County Sheriff's Office; the Delaware County Jail; and the Arapahoe County Prosecutor's Office. The defendant also created multiple websites incorporating the victim's name, in which the defendant made derogatory statements about the victim and his official position, specifically designed to carry out his attacks on the victim. The defendant further filed multiple state and federal civil lawsuits against the victim, another arresting officer from his 1999 arrest, and the Delaware Police Department, alleging various claims of corruption and fraud.

The victims had a reasonable fear of the defendant based on his relentless, persistent stalking activity and detailed threats, some of which were violent in nature. The victims were so distressed that they were left with profound feelings of paranoia and endangerment and felt compelled to change their lifestyle in order to remain vigilant. The victims installed a security system and cameras in their home, never opened their windows at night, could not relax in their own home and, most unfortunately, constantly had to consider tactical responses in all areas of their life, including personal responses at home, in public, and even when attending church. The defendant is responsible for causing the victims profound levels of stress and emotional injury. The extent of the defendant's deliberate, relentless stalking and the harm to the victims from his crime warrants the imposition of a severe punishment.

***The History and Characteristics of the Defendant***. The defendant is a highly intelligent and capable party. He has an extraordinary memory. The nature and circumstances of his offense reveal that he is fully competent, technologically savvy, and incredibly motivated. His prior criminal history includes similar conduct; in fact, his cyberstalking activity in this case stemmed from his 1999 arrest for stalking another victim.

Above all, the defendant is dangerously obsessive. The duration of his criminal conduct speaks for itself. For nearly two decades, the defendant engaged in a campaign to harass and intimidate his victims. At his detention hearing, the United States presented evidence of the defendant's intent – to bring shame, humiliation, and embarrassment to the victim and his family – his intense obsession and amount of anger towards the victim, and his ability to blame the victim for virtually everything negative in his life. A consented search of the defendant's extended-stay hotel room (i.e., his residence) revealed meticulous documentation of all of the mailings, brochures, fliers, emails, and website content that he had distributed over the years as part of his

12

harassing and intimidating conduct towards the victim and his family. The defendant's filing of several lawsuits against the victim and other associated parties over the years further reveals his unrelenting obsession, as well as his understanding of the law and legal process. Each time the defendant mailed a threatening or harassing letter, distributed offense fliers, or promoted one of his disparaging websites, he made a conscious choice to do so.

The defendant's post-arrest behavior in the instant case is particularly alarming and reveals his calculated and manipulative personality. After his initial arrest and the return of the indictment, the defendant was ordered detained. He then signed a plea agreement accepting responsibility for his actions. After the plea agreement had been filed, but before his change-of-plea hearing, the defendant filed a motion seeking pretrial release claiming that "the case ha[d] undergone a dramatic shift" because he had signed a plea agreement and he had "finally moved past his past" and was "now accepting the reality of the situation." (ECF No. 26, at 3.) The motion was denied without prejudice permitting renewal after the change-of-plea hearing.

The defendant then entered a plea of guilty. But after the initial PSR was disclosed and he saw his potential guidelines range, the defendant moved to withdraw his guilty plea – two weeks before sentencing – stating that he wished to proceed to trial pro se. For the first time since he entered his guilty plea, the defendant asserted his innocence. (This was further contradicted, however, by a subsequent letter he sent to Magistrate Judge Deavers in late February again seeking review of her detention order.) His motion to withdraw his guilty plea was recently denied by this Court, and the case was scheduled for sentencing. The defendant now apologizes for asking to withdraw his plea – now denied – and renews his acceptance of responsibility. Thus, despite repeatedly acknowledging his guilt and acceptance of responsibility when his focus was on obtaining pretrial release, the defendant asserted his innocence when his focus turned on his

13

ultimate punishment and avenue for relief (i.e., and withdrawing his guilty plea).  And since that that final avenue has been denied, he now re-acknowledges his guilt and acceptance of responsibility when his focus is on obtaining the lightest possible sentence.

In sum, the nearly two decades of deliberate cyberstalking activity, the time that has elapsed since the indictment and his manipulation of his motions and correspondence to the Court – combined with his nature and background, as well as his experience with legal process and the criminal justice system – all speak to the defendant's history and characteristics.

***The Need to Reflect the Seriousness of the Offense, Promote Respect for the Law, and Provide Just Punishment, as well as the Need to Afford Adequate Deterrence to Criminal Conduct and Protect the Public.***  The Court must also consider the need for the sentence imposed "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense," 18 U.S.C. § 3553(a)(2)(A), as well as "to afford adequate deterrence to criminal conduct," *id.* § 3553(a)(2)(B), and "to protect the public from further crimes of the defendant." *Id.* § 3553(a)(2)(C).  The Government respectfully submits that a sentence within the applicable guidelines range of 51–60 months is necessary to serve these purposes.

The investigation revealed that the defendant engaged in a campaign to harass and intimidate the victims on many occasions and over an extremely prolonged period of time.  The harassment occurred over a period of years; involved numerous, multi-media contacts, including disparaging letters, the creation and promotion of websites, business cards, and fliers; and involved contacts with the victims' friends, family members, and community.  Further, the defendant's campaign of harassment substantially impaired the victim and his family's behavior, as manifested by the changes they administered in their lives over the years.  The victims were so distressed that they were left with profound feelings of paranoia and felt compelled, among other measures, to

14

install a security system and cameras in their home.

The victims' impact statements movingly capture the extreme psychological distress that the defendant's stalking activities inflicted on them (in each case filed with the submitter's consent to make such a statement a part of the public record):

- **R.M.**:  What began as a diligent and routine stalking investigation quickly turned into an extraordinary and perverse history of threats and harassment that has lasted over 19 years. . . . While police officers must always remain attentive while on duty, I found it necessary to remain on guard at all hours of the day and night.  With good reason, I wondered: "when will Young's perverse obsession with me escalate into an act of intentional violence?" . . . Through the years, his stalking behavior has intensified and the nature of his contacts became even more overtly threatening.  They began to include people outside my family, such as the pastor of my church where we've worshipped for 37 years. . . .

    My concern for the safety of my family, fellow churchgoers, and others manifested itself in a never-ending attitude of vigilance.  I took measures above the norm to assure safety in our home, our church, as well as when and how I moved throughout the community.  When we entertained guests I often wondered how I would defend them if he came to my residence.  While we attended church to worship and find relief from a hectic and troubled world, I became concerned that he would attempt to harm others in that congregation.

    This constant state of attentiveness and efforts to maintain as possible a normal lifestyle has taken a significant toll on me and those closest to me.  We've been denied a normal lifestyle, even for someone involved in investigating and apprehending dangerous criminals.  In my 38 years of doing this job I have NEVER encountered someone like William Young.  That alone should lend significance to the abnormal actions of this man.

    Here's one point I hope Your Honor will take into very serious account when issuing a sentence: the first genuine respite my family and I have had in several years began when Young was put behind bars.

- **J.M**.:  For the last 18 years, Mr. Young has caused affliction for our family.  The annoying and persistent letters, threats, and slander and disgusting sexual perversion which have been generated from Mr. Young have caused us enormous distress. . . . Mr. Young has stolen life's simple pleasures from us, such as leaving windows open at night, feeling the need to pull drapes and shut blinds while relaxing on our backyard patio, etc. My husband is a protector of the public, but due to these threats, he never let his guard down even while at home.  Eighteen years of being in defense mode has taken its toll on my husband and our family.  We have had to add security to our home and our health has been affected due to

15

the nagging stress evoked by Mr. Young.

As noted by the Probation Officer, the victims lost a sense of security and safety, and a significant punishment is appropriate to reflect the irreparable harm to the victims. (PSR, ¶¶ 25–28.) The defendant's criminal history, prolonged pattern of stalking, and continued persistence in stalking his victims demonstrates his disregard for the law and his victims. Moreover, the investigation of this offense revealed that the defendant continued to harass his prior victim, T.S., as well as her husband, long after his prior convictions and even after he was court-ordered to have no contact with her or her family. (PSR, ¶ 52.) These facts militate in favor of a much greater sentence to reflect the seriousness of the offense, promote respect for the law, and provide just punishment.

Further, the Government's recommended sentence also considers the need to deter the defendant from committing additional crimes and to protect the public. Given his history, no one can say with any degree of certainty that the defendant will stop threatening and harassing future victims. He has already been convicted of stalking T.S., and of violating his probation in that case after continuing to have contact with T.S. and his family. That punishment notwithstanding, the defendant went on to engage in another 17 years of the same behavior with different victims. The very real threat of future criminal behavior also supports a sentence within the applicable guidelines range of 51–60 months.

***The Need to Avoid Unwarranted Sentence Disparities.*** The Court must also consider the need for the sentence imposed "to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). Other courts have justified a sentence even higher than the recommended sentence of 51–60 months:

- In *United States v. Saver*, Case No. 11-CR-00113-DBH (D. Me. Dec. 4, 2012), the defendant was sentenced to the statutory maximum of five years imprisonment after

16

pleading guilty to a charge of cyberstalking. The defendant had used the internet to harass and cause substantial emotional distress to his ex-fiancée by uploading to adult pornography websites sexually explicit video clips of her using her real name and street address, creating a Facebook account in her name in which he posted sexually explicit photographs and links to sexually explicit videos and posting that she was interested in a number of sexual activities, and creating dozens of Yahoo! Messenger profiles using a variation of her name, using sexually explicit photos of her and inviting men to her residence for sexual encounters.

- In *Sangster v. United States*, Case No. 502CR57HL, 2005 WL 1127130 (M.D. Ga. May 5, 2005), the defendant pleaded guilty to one count of interstate stalking and admitted to twelve instances of using the telephone or the mail to engage in stalking behavior. As part of the plea agreement, the government agreed not to prosecute him for similar illegal acts in other districts. The court imposed a sentence of 60 months imprisonment, the maximum permitted by the plea agreement and a significant upward departure from the initial guideline sentencing range of 37–46 months.

- In *United States v. Bowker*, 372 F.3d 365 (6th Cir. 2004), *vacated on other grounds*, 543 U.S. 1182 (2005), the defendant, who had 20 prior convictions, was sentenced to 96 months imprisonment for interstate stalking, cyberstalking, telephone harassment, and mail theft after engaging in a multi-month harassment campaign of e-mails, letters, and phone calls to a female television personality.

- In *United States v. Rose*, 315 F.3d 956 (8th Cir. 2003), *cert. denied*, 538 U.S. 1067 (2003), the defendant sent a number of threatening messages to a woman he had met on the internet and to her neighbors, for which he was eventually arrested. The defendant was convicted of interstate cyberstalking and threatening communications and sentenced to 10 years imprisonment.

*See also, e.g.*, *United States v. Grimes*, 702 F.3d 460, 472 (8th Cir. 2012) (upward variance to 288-month sentence on 19 counts based on stalking and harassing communications); *United States v. Rose*, 315 F.3d 956, 958 (8th Cir. 2003) (120-month sentence for interstate stalking and two counts of threatening communications); *United States v. Bell*, 303 F.3d 1187, 1192–93 (9th Cir. 2002) (120-month sentence in interstate stalking case where court upwardly departed five levels involving escalating behavior). Comparing this case to other similar cases, a sentence within the applicable guidelines range of 51–60 months is appropriate and would not create an unwarranted sentencing disparity. Such a sentence would account for the defendant's relentless efforts to harass

17

and intimidate victims R.M. and J.M., the severe emotional harm he actually caused them, is consistent with the guidelines, and is reasonable under § 3553(a).

### 3.  CONCLUSION

For these reasons, the United States respectfully submits that a sentence within the applicable guidelines range of 51–60 months would be sufficient, but not greater than necessary, to achieve the statutory goals of sentencing.

Respectfully submitted,

BENJAMIN C. GLASSMAN
United States Attorney

s/Jessica H. Kim
JESSICA H. KIM (87831)
Assistant United States Attorney
303 Marconi Boulevard, Suite 200
Columbus, Ohio 43215
Office: (614) 469-5715
Fax: (614) 469-5653
E-mail: Jessica.Kim@usdoj.gov

### CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Government's Sentencing Memorandum was served this 4th day of June 2018, electronically upon all counsel of record.

s/Jessica H. Kim
JESSICA H. KIM (0087831)
Assistant United States Attorney